# EXHIBIT E



**TARGET PROFESSIONAL PROGRAMS**
*A Division of CRC Insurance Services*



**THE
HARTFORD**

**Lawyer's Professional Liability Program
(A Claims Made Policy)**

## Binder Confirmation

| To: Geri Brown | Firm: KEY INSURANCE AGENCY INC |
|---|---|
| From: Kim Marks | Policy Number: LS 1621169 |

Re: Law Office of John S. Xydakis

We are pleased to confirm we have bound coverage for the above named insured as follows:

Twin City Fire Insurance Company

| **Period:** 1/26/2017 **to** 1/26/2018 | **Retroactive Date:** 01/26/2016 | |
|---|---|---|
| **Limits:** $1,000,000 | **Deductible:** $5,000 | **Each Claim** |
| $1,000,000 **Each Claim Aggregate** | N/A | **Aggregate** |
| **Premium:** $3,441.00 | **Commission:** 10.00% | |

ENDORSEMENTS:

| **Description** | **Endorsement #** |
|---|---|
| Declaration Page | |

LP00M01900       Schedule of Endorsements,
LP00H05301       Lawyers Professional Liability Insurance Policy,
RN00N02600       In Witness Page,
HG00H12900 (10-16) US Dept of Treasury, Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders,
HR00H04800       Policyholder Notice,
HR00H09300       Producer Disclosure Notice,
HR12H00101 (9-11) Cancellation and Nonrenewal Endorsement,
HR12H00500       Important Information For Illinois Policyholders,
LP00H07500       Asbestos Exclusion Endorsement,
LP00H08800       Mailing Address for Notice Endorsement,
LP00H12101 (4-15) Network Security, Data Breach & Theft of Data End,
LP00H30500 (3-16) Workplace Violence Coverage Endorsement,
LP12H09401       Pollution Exclusion Endorsement,
LP12H10201       Amendatory Endorsement

Please review the above information. If there are any discrepancies, please notify us immediately. Your policy will
follow shortly. Thank you for your business.

IMPORTANT NOTES:

Commission percentages shown are for direct commission only and do not include any applicable contingent
commission or other forms of compensations.



**Name of Insurer:** Twin City Fire Insurance Company          Indianapolis, IN

## LAWYERS' PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY. COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION DATE OF THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS CLAIMS EXPENSES. THE DEDUCTIBLE IS APPLICABLE TO CLAIMS EXPENSES AND DAMAGES. PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT, BROKER, OR REPRESENTATIVE.

**POLICY NUMBER:** LS 1621169

**PRODUCER:**   Target Underwriting Management Co.
10 Tower Lane
Avon, CT 06001

**SERVICE OFFICE:**   Target Insurance Services
1230 East Diehl Road, Suite 350
Naperville, IL 60563

**RENEWAL OF:** LS 1621169

## DECLARATIONS

**ITEM # 1.**   **NAMED INSURED AND MAILING ADDRESS:**

Law Office of John S. Xydakis

30 N. Michigan Ave., Suite 402
Chicago, IL 60602-

**ITEM # 2.**   **POLICY PERIOD EFFECTIVE DATES:**   **FROM:** 1/26/2017 **TO:** 1/26/2018
(12:01 A.M. standard time at the address shown in Item #1.)

**ITEM # 3.**   **RETROACTIVE DATE:** 01/26/2016

**ITEM # 4.**   **LIMITS OF LIABILITY:**

LIMIT OF LIABILITY EACH CLAIM                    $1,000,000
AGGREGATE LIMITS OF LIABILITY                    $1,000,000

**ITEM # 5.**   **DEDUCTIBLE:**

DEDUCTIBLE EACH CLAIM                    $5,000
AGGREGATE DEDUCTIBLE                    N/A

**ITEM # 6.**   **PREMIUM PER POLICY PERIOD:**   $3,441.00

If applicable { State Surcharge:
                State Muni Tax:

**ITEM # 7.**   **ENDORSEMENTS:** (See attachments.)

_Authorized Representative_

January 30, 2017

**Date**

# ENDORSEMENT

This endorsement, effective on 1/26/2017 at 12:01 A.M. standard time, forms a part of:

Policy No. LS 1621169 of the Twin City Fire Insurance Company

Issued to Law Office of John S. Xydakis

*Douglas Elliot*

Douglas Elliot, President

## SCHEDULE OF FORMS AND ENDORSEMENTS

```
LP00M0I900          Schedule of Endorsements,
LP00H05301          Lawyers Professional Liability Insurance Policy,
RN00N02600          In Witness Page,
HG00H12900 (10-16)  US Dept of Treasury, Office of Foreign Assets Control ("OFAC") Advisory
Notice to Policyholders,
HR00H04800          Policyholder Notice,
HR00H09300          Producer Disclosure Notice,
HR12H00101 (9-11)   Cancellation and Nonrenewal Endorsement,
HR12H00500          Important Information For Illinois Policyholders,
LP00H07500          Asbestos Exclusion Endorsement,
LP00H08800          Mailing Address for Notice Endorsement,
LP00H12101 (4-15)   Network Security, Data Breach & Theft of Data End,
LP00H30500 (3-16)   Workplace Violence Coverage Endorsement,
LP12H09401          Pollution Exclusion Endorsement,
LP12H10201          Amendatory Endorsement
```

LP 00 M019 00 0905

# LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY

### NOTICE - THIS IS A CLAIMS MADE AND REPORTED POLICY.

### PLEASE READ IT CAREFULLY.

**COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION DATE OF THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS CLAIMS EXPENSE. THE DEDUCTIBLE AMOUNT IS APPLICABLE TO CLAIMS EXPENSE AND DAMAGES.**

All words or phrases (other than captions) that appear in bold face are defined in **SECTION I: B. DEFINITIONS**. The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions, exclusions and limitations of this policy.

Throughout the policy the words "you" and "your" refer to the **named insured** and **predecessor firm(s)**. The words "we", "us" and "our" refer to the company providing this insurance as shown in the Declarations.

In consideration of the payment of the premium as set forth in the Declarations, and in reliance upon the statements, representations, and warranties in the application which are made part of this policy, and subject to the **limit of liability** as set forth in the Declarations and to all the exclusions, conditions, and other terms of the policy, we agree with you as follows:

### SECTION I: SCOPE OF COVERAGE

## A. COVERAGE AGREEMENT

We will pay on behalf of an **insured,** subject to the **limit of liability,** such **damages** and **claims expense** in excess of the applicable deductible amount for **claims** made during the **policy period** or applicable **extended reporting period** and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or applicable **extended reporting period**. The **damages** must arise out of a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** or **non-profit services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

## B. DEFINITIONS

Whenever used in the policy:

1. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time. **Bodily injury** includes mental anguish and emotional distress.

2. **Claim** means:

    a. A demand received by an **insured** for money or services alleging a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** or **non-profit services** for others by you or on your behalf;

    b. Service or receipt of a suit or arbitration proceedings or any other alternative dispute resolution proceeding in which **damages** are claimed; or

    c. A request received by an **insured** for a tolling agreement with respect to statutes of limitations or other bars against the filing or maintenance of lawsuit or arbitration proceeding seeking **damages** or services from an **insured,**

3. **Claims expense** means all reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim,** suit or proceeding arising in connection therewith, if incurred by us or by an **insured** with our written consent. **Claims expense** includes but is not limited to;

    a. Costs taxed against an **insured** in **claims** or suits;

©2015, The Hartford

b.  Interest on the entire amount of any judgment which accrues after the entry of judgment and before we have paid or tendered or deposited into court that part of the judgment which does not exceed the applicable **limit of liability** shown in the Declarations;

c.  Premiums on appeal bonds in any suit and premium on bonds to release attachments in any suit for an amount not in excess of the applicable **limit of liability** shown in the Declarations. We shall not be obligated to apply for or furnish any bonds; and

d.  Reasonable and necessary expenses incurred by an **insured** at our request to assist us in the investigation of a **claim**, including actual loss of earnings up to $500 a day for each **insured** because of time off from work, subject to a limit of $5,000 for each individual **insured** and subject to a maximum limit of $10,000 per **policy period**. The deductible amount does not apply to these expenses.

4.  **Damages** mean compensatory damages that an **insured** becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with our assistance and approval.

    **Damages** do not include:

    a.  Any fines, sanctions or penalties, or punitive or exemplary damages;

    b.  Restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an **insured** for **professional legal services**;

    c.  Any damages which are a multiple of compensatory damages awarded against an **insured**;

    d.  Matters deemed uninsurable by law; or

    e.  Equitable, injunctive or other non-monetary relief.

5.  **Domestic partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or any domestic partner relationship arrangement recognized outside of the U.S.

6.  **Extended reporting period** means a period of time immediately following the effective date of termination, cancellation, or non-renewal of this policy in which **claims** may be made against an **insured** and reported to us under this policy and are the result of a negligent act, error, omission, or **personal injury** which occurred prior to the end of the **policy period** and after the **retroactive date** and which are otherwise covered under this policy.

7.  **Insured** means:

    a.  The **named insured** and **predecessor firm(s)**;

    b.  Any lawyer who was, is now or hereafter becomes a principal, officer, director, employee, principal shareholder or member of yours, but only while acting within the scope of their duties for you;

    c.  Any lawyer who has retired from you, but only for **professional legal services** while acting within the scope of his or her duties for you;

    d.  Any lawyer retained as an of counsel, independent contractor or on a per diem basis by you, but only with respect to **professional legal services** while acting within the scope of their duties for you;

    e.  Any non-lawyer employees, but only while acting within the scope of their duties for you;

    f.  Any insurance risk manager who is an employee of the **named insured**; and

    g.  Any organization you newly acquire or form provided written notice is given to us within sixty (60) days of the acquisition or formation, the new entity meets our underwriting eligibility guidelines, and we provide you with our written acceptance. This provision applies to any principal, officer, director, employee, principal shareholder or member of such newly acquired or formed organization.

    However, coverage under this provision does not apply to **claims** that occurred before you acquired or formed the organization.

8.  **Limit of liability** means the most that we will pay for all **damages** and **claims expense** for all **claims** to which this insurance applies pursuant to **SECTION I: D. LIMIT OF LIABILITY AND DEDUCTIBLE.**

9. **Lobbyist** means a lawyer who is registered in accordance with any federal or state statute governing the conduct of lobbyists.

10. **Named insured** means the individual or entity stated in the Declarations.

11. **Non-profit entity** means any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

12. **Non-profit services** means only services that the **insured** performs for others, with the knowledge and consent of, or as part of the duties regularly assigned by, the **named insured**, while serving in the capacity as a:

    a. director, officer or committee member of an attorneys' bar association; or

    b. director, officer or trustee of a **non-profit entity**.

13. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Abuse of process or malicious prosecution;

    c. Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

    d. The publication or utterance of a libel or slander or other defamatory or disparaging material or publication or utterance in violation or an individual's right of privacy.

14. **Policy period** means the period from the inception date of this policy to the policy expiration date as stated in the Declarations or the date of cancellation, whichever is earliest.

15. **Predecessor firm** means any legal entity disclosed to us which was engaged in the practice of law and to whose financial assets and liabilities the **named insured** is the majority successor in interest.

16. **Professional legal services** means services performed or advice given by you or on your behalf, including pro-bono services performed with the written consent of the **named insured**, for others in the conduct of your practice as a:

    a. Lawyer;

    b. Real estate title insurance agent;

    c. Notary public;

    d. Arbitrator;

    e. Mediator;

    f. **Lobbyist**;

    g. Member, director, or officer of any attorneys' bar association, its governing board or any of its committees; or

    h. Administrator, conservator, executor, guardian, trustee, receiver, or any similar fiduciary capacity.

    **Professional legal services** includes the publication or presentation of research papers or similar materials by an **insured,** but only if the fees generated from such work are not greater than five thousand dollars ($5,000).

    **Professional legal services** does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the **named insured** or any **predecessor firm(s)**.

17. **Property damage** means;

    a. Physical injury to tangible property, including all resulting loss of use of that property; or

    b. Loss of use of tangible property that is not physically injured.

18. **Retroactive date** means the date specified in the Declarations, or in any endorsement attached to this policy, on or after which the negligent act, error, omission, or **personal injury** must have occurred in order for any **claim** or any notice of circumstance given to us pursuant to **SECTION IV: A. AWARENESS OF CIRCUMSTANCES** and **B. NOTICE OF CLAIM** to be covered under this policy.

## C. DEFENSE AND SETTLEMENT

Subject to all terms and conditions of the policy, we shall appoint counsel of our choice to defend any suit against an **insured** seeking **damages** which are payable under the terms and conditions of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent. Other than suits for **damages** as set forth above, we at our sole option shall have the right, but not the obligation, to appoint counsel to defend any suit or other proceeding.

We will not settle a **claim** without an **insured's** consent, which consent will not be unreasonably withheld. If, however, an **insured** refuses to consent to a settlement recommended by us and acceptable to the claimant and elects to pursue the defense of the **claim** or continue proceedings in connection with the **claim**, then our liability for **damages** and **claims expense** relating to that **claim** will not exceed the amount for which we would have been liable for **damages** and **claims expense** if the **claim** had been so settled when and as so recommended, plus 50 (fifty) percent of all additional **damages** and **claims expense** in excess of such amount. The balance of such liability will be retained by the **insured**. The Insurer will have the right to withdraw from the further defense of the **claim** by tendering control of the defense thereof to the **insured**. The operation of this paragraph will be subject to **SECTION I: D. LIMIT OF LIABILITY AND DEDUCTIBLE**.

Bankruptcy, insolvency, or dissolution of an **insured** or of an **insured's** estate shall not relieve us or the **insured** of its obligations under this policy. In the event of your bankruptcy, insolvency, or dissolution, we shall have, at our sole option, the right to settle any **claim** without obtaining consent.

We shall not be obligated to pay **damages** or **claims expense** or defend or continue to defend any **claim** after the applicable **limit of liability** as stated in the Declarations has been exhausted by payment of **damages** or **claims expense** or a combination of both.

## D. LIMIT OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **insureds** under this policy, the number of persons or organizations seeking **damages,** the number of **claims** made or the number of **extended reporting periods** purchased, our liability is limited as follows:

1. **Limit of Liability**
   a. The amount stated in the Declarations as applicable to each **claim** is the most we will pay for all **damages** and **claims expense** arising out of the same or related negligent acts, errors, omissions or **personal injury**. All **claims** arising out of the same or related negligent acts, errors, omissions or **personal injury** will be deemed to have been made when the first of such **claims** is made whether such demands are made against one or more **insureds** or whether such demands are made by one or more persons and will be treated as a single **claim**.
   b. The amount shown in the Declarations as the aggregate limit is the most we will pay for all **damages** and **claims expense** for all **claims** to which this insurance applies.

2. **Deductible**
   a. Our obligation to pay **damages** and **claims expense** under this policy applies only to that portion of **damages** and **claims expense** which are in excess of the deductible amount stated in the Declarations.
   b. The deductible amount applies to all **damages** and **claims expense** incurred as the result of each **claim**.
   c. The terms of the policy, including those with respect to our right and duty to defend suits and your duties in the event of a **claim**, suit or circumstances which may give rise to a **claim**, apply irrespective of the application of the deductible amount.
   d. We may pay any part or all of the deductible amount in the investigation or settlement of any **claim**. Upon notification of the action we have taken, you shall reimburse us for that part of the deductible amount we have paid. If we make a payment under the deductible amount and you do not reimburse us within sixty (60) days, we will be entitled to recover reasonable attorney's fees incurred in collecting the amount we have paid.
   e. The **limit of liability** will not be reduced by the amount of any **damages** and/or **claims expense** within the deductible amount.

f.   We will reduce the deductible amount stated in the Declarations by fifty percent (50%) if you agree with a request we make, and agree with the terms and conditions we specify, to submit a **claim** made against you to binding arbitration or mediation. While the right to submit a **claim** to binding arbitration or mediation shall be ours solely, no **claim** shall be submitted to arbitration without your prior written consent.  In the case of mediation, the maximum dollar amount the deductible amount will be reduced under this provision is $10,000.

## E.  TERRITORY

This policy applies to any negligent act, error and omission or **personal injury** in the rendering of or failure to render **professional legal services** anywhere in the world, provided that **claim** is made and suit, if any, is brought within the United States of America (including its territories or possessions), Puerto Rico and Canada.

## F.  EXTENDED REPORTING PERIODS

1.   We will provide one or more **extended reporting periods** if we or you cancel or non-renew the policy for any reason other than non-payment of premium or reimbursement of the deductible amount or if you leave the practice of law as a result of loss, suspension, or involuntary surrender of a license to practice law.  If you have a solo practice when you lose your license, then neither the firm nor you are eligible to purchase or receive an **extended reporting period**.

a.   **Extended Reporting Period**

You will have the right to purchase an **extended reporting period**.  You must exercise such right by providing written notice to us accompanied by the additional premium within sixty (60) days after the termination of the policy.  If any **extended reported period** is exercised, an endorsement will be processed. This endorsement will cover **claims** first made during the **extended reporting period** for negligent acts, errors, omissions, or **personal injury** which occurred prior to the end of the **policy period** and are otherwise covered by the policy.  The additional premium for the **extended reporting period** is based on a percentage of the full annual premium for the **policy period** and shall be:

100% of the policy's annual premium for one year;

165% of the policy's annual premium for three years;

200% of the policy's annual premium for five years; or

250% of the policy's annual premium for an unlimited period.

b.   Retirement **Extended Reporting Period**

If an **insured**, after being insured for Lawyer's Professional Liability Coverage with a member of the Hartford Financial Services Group, Inc. group of companies for three or more full consecutive years:

i.    Retires from the practice of law during the **policy period**;

ii.   Ceases the performance of all **professional legal services** covered by this policy; and

iii.  Is fifty-five (55) years of age or older;

they will be provided an unlimited **extended reporting** period without additional charge.  The **insured**, within sixty (60) days after the end of the **policy period** must notify us in writing that this coverage is desired.  This retirement **extended reporting period** does not apply to **claims** that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such **claims**.

c.   Death or Disability **Extended Reporting Period** for a Sole Practitioner

If you die or become totally and permanently disabled during the **policy period**, a death or disability **extended reporting period** for a sole practitioner shall be provided without additional charge.  Coverage for reporting **claims** is extended until the executor or administrator of the estate is discharged or your disability ends.  You or your estate must, within sixty (60) days after the end of this **policy period**, notify us in writing if

this coverage is desired. This death or disability **extended reporting period** for a sole practitioner does not apply to **claims** that are covered under any subsequent insurance available to you, or that would be covered but for exhaustion of the amount of insurance applicable to such **claims**. We also require:

    i.    Written proof of your permanent and total disability, including the date it happened, certified by your attending physician. You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

    ii.    Written proof of the date of your death.

    d.    Individual **Extended Reporting Period**

    During a claims-made relationship and any **extended reporting period**, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any **extended reporting period** after such affiliation has ceased for such person's covered negligent acts, errors, omissions or **personal injury** during such affiliation. If this policy was issued to a corporation or partnership, we will provide individual **extended reporting period** coverage upon termination of coverage to any person covered under the policy if:

    i.    You have been placed in liquidation or bankruptcy or permanently cease operations;

    ii.    You do not purchase **extended reporting period** coverage; and

    iii.    The individual **insured** requests the individual **extended reporting period** coverage in writing within sixty (60) days of the end of the **policy period**. Upon payment of the additional premium, we will issue an endorsement providing a one, three, five or unlimited individual **extended reporting** period. This endorsement will cover **claims** first made during the individual **extended reporting period** for negligent acts, errors, omissions or **personal injury** which occurred prior to the end of the **policy period** and are otherwise covered by the policy. The additional premium for the individual **extended reporting period** is based on a percentage of the full annual premium for the **policy period** as stated in **SECTION I: F. EXTENDED REPORTING PERIODS 1. a.** We will not be obligated to provide any notice to any person of the availability of the individual **extended reporting period** coverage other than the first **named insured**.

    **2.**    **Extended Reporting Period** Coverage

    The **limit of liability** available for any **extended reporting period** is part of, and not in addition to, the **limit of liability** as shown in the Declarations. The deductible amount shown on the Declarations will apply separately to each **claim** reported under any **extended reporting period**. The deductible amount will be waived in the event of the **insured's** death or if the **insured** becomes totally and permanently disabled.

    None of the **extended reporting periods** are cancelable or renewable. The additional premium for the **extended reporting period** is fully earned at the inception of the **extended reporting period**.

## SECTION II: COVERAGE EXTENSIONS

## A. SPOUSAL/DOMESTIC PARTNER LIABILITY COVERAGE

Coverage shall apply to the lawful spouse or **domestic partner** of an **insured** for a **claim** made against such spouse or **domestic partner,** provided that:

    **1.**    such **claim** arises solely out of:

        a.    such person's status as the spouse or **domestic partner** of an **insured**; or

        b.    such spouse or **domestic partner's** ownership of property sought as recovery for a negligent act, error, omission, **personal injury** or **non-profit services;**

    **2.**    the **insured** is named in such **claim** together with the spouse or **domestic partner**; and

    **3.**    coverage of the spouse or **domestic partner** shall be on the same terms and conditions, including any applicable deductible amount, as apply to coverage of the **insured** for such **claim**.

No coverage shall apply to any **claim** for any negligent act, error, omission, **personal injury** or **non-profit service** of such spouse or **domestic partner.**

## B. ESTATES AND LEGAL REPRESENTATIVES

In the event of the death, incapacity or bankruptcy of an **insured**, any **claim** made against the estate, heirs, legal representatives or assigns of such **insured** for a negligent act, error, omission or **personal injury** of such **insured** shall be deemed a **claim** made against such **insured**. No coverage shall apply to any **claim** for a negligent act, error, omission or **personal injury** of such estate, heirs, legal representatives or assigns.

## C. DISCIPLINARY OR REGULATORY PROCEEDING COVERAGE

We shall pay reasonable and necessary fees, costs and expenses (but not **damages** or sanctions) incurred by an **insured** resulting from the defense of a proceeding by a regulatory or disciplinary official or agency first initiated and reported to us during the **policy period** to investigate a charge of professional misconduct in the rendering of or failure to render **professional legal services** subject to a limit of $50,000 for each **insured** and subject to a maximum limit of $100,000 per **policy period.** No deductible amount shall apply to this coverage extension nor shall expenses paid under this coverage extension serve to reduce the **limit of liability**. This coverage is also subject to any exclusions of the policy and coverage defenses which might apply with respect to **claims**. In order to receive coverage under this provision, you must give us written notice prior to the end of the **policy period** and no later than thirty (30) days of receipt of any disciplinary allegation made against any **insured**.

## D. SUBPOENA ASSISTANCE COVERAGE

If the **insured** first received during the **policy period** a subpoena for documents or testimony as fact witness arising from their rendering of **professional legal services** which occurred after the **retroactive date** and is reported to us during the **policy period**, and the **insured** would like our assistance in responding to the subpoena, the **insured** may provide us with a copy of the subpoena and we will retain an attorney and we shall pay reasonable and necessary fees, cost and expenses to provide advice regarding the production of documents, to prepare the **insured** for sworn testimony and to represent the **insured** at their deposition subject to a limit of $50,000 for each **insured** and subject to a maximum limit of $100,000 per **policy period**, provided that:

1.  The subpoena arises out of a lawsuit to which the **insured** is not a party; and

2.  The **insured** has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the **insured** provided such advice or testimony in the past.

    This coverage is also subject to any exclusions of the policy and coverage defenses which might apply with respect to **claims**. This amount is not subject to any deductible amount nor shall expenses paid under this coverage extension serve to reduce the **limit of liability**. In order to receive coverage under this provision, you must give us written notice within thirty (30) days of receipt of any subpoena received by any **insured**.

## E. PRE-CLAIM EXPENSE COVERAGE

At our discretion, we will pay reasonable and necessary fees, costs and expenses incurred by us in the investigation of a matter reported to us according to the provisions of **SECTION IV: A. AWARENESS OF CIRCUMSTANCES.** Such fees, costs and expenses must be incurred prior to the date than any **claim** is made arising out of such circumstances, are not subject to the deductible amount and do not reduce the **limit of liability**. Once a notice of circumstance becomes a **claim**, **damages** and **claims expense** that result from such **claim** are subject to the deductible amount and will reduce the **limit of liability.**

## SECTION III: EXCLUSIONS

©2015, The Hartford

**EXCLUSIONS**

This insurance does not apply to **claims**:

1. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission, **personal injury** or **non-profit service** committed by, at the direction of, or with the knowledge of an **insured**. This exclusion does not apply to an **insured** who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or **personal injury**, provided that:

   a. Such **insured** had neither notice nor knowledge of such knowingly wrongful act, error, omission, **personal injury** or **non-profit services**; and

   b. Such **insured**, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission, **personal injury** or **non-profit service**, immediately notifies us.

2. Arising out of **professional legal services** rendered by an **insured** while the **insured's** license to practice law was suspended, revoked, surrendered or lapsed.

3. Arising out of **bodily injury** or **property damage**.

4. Made by one **insured** under this policy against another **insured** unless it arises out of a negligent act, error or omission committed by or alleged to have been committed by an **insured** in his or her rendering **professional legal services** as an attorney or notary for such **insured** bringing the **claim** and the **claim** is brought without the cooperation, solicitation or assistance of any other **insured**.

5. Arising out of any actual or alleged discrimination of any kind by an **insured**.

6. Arising out of an **insured's** activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the **insured** is deemed to be a fiduciary solely by reason of **professional legal services** rendered with respect to any employee benefit plan.

7. Arising out of an **insured's** capacity as a public official or employee of a governmental body, subdivision or agency thereof unless the **insured** is deemed to be such solely by virtue of rendering **professional legal services** to such governmental body, the remuneration for which services inures to your benefit; or

8. Made by or on behalf of:

   a. A **non-profit entity** or any of its affiliates or subsidiaries;

   b. An attorneys' bar association; or

   c. directors, officers or trustees of a **non-Profit Entity** or an attorneys' bar association;

   in any **insured's** rendering of, or failure to render, **non-profit services**, provided that this exclusion will not apply if the **claim** is made and continued by or on behalf of such **non-profit entity** or attorneys' bar association without the solicitation, assistance, active participation or intervention of such **non-profit entity** or attorneys' bar association or their respective directors, officers or trustees.

9. Arising out of a negligent act, error, omission, **personal injury** or **non-profit service** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a **claim**.

10. Arising out of:

    a. The promotion, sale or solicitation for sale of securities, real estate, investments or other assets by any **insured**; or

    b. Recommendations, representations, or opinions concerning investment advice by an **insured** or any person or organization referred to by an **insured** for investment advice; or the performance or nonperformance of securities, real estate, investments, or other assets.

11. Arising out of **professional legal services** performed for or on behalf of any organization other than you or a **predecessor firm** if, at any time when those services were performed, the organization was or was intended to be:

     a.   Directly or indirectly controlled, operated or managed by an **insured**; or

     b.   Owned by an **insured**, or by a spouse of any **insured**, in a percentage which exceeds:

         i.  five percent of the issued and outstanding voting stock of the shares of a publicly traded organization; or

         ii.  ten percent of the shares of a closely or privately held organization.

12. Against an **insured** as a beneficiary or distributee of any trust or estate.

13. Arising out of liability assumed by an **insured** under an indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an **insured** would have in the absence of such agreements.

14. Arising out of any alleged conversion, misappropriation, commingling, or improper use of money or funds held for others.

15. Arising out of the alleged notarized certification or acknowledgment by any **insured** of a signature on a document when the **insured** did not witness the signature being placed on the document.

16. Arising out of **claims** of actual or alleged sexual misconduct or sexual harassment by an **insured**, whether or not alleged to be consensual.

17. Arising out of **professional legal services** performed by a lawyer with whom you shared common office space or common office facilities and who is not an **insured** under this policy.

18. Arising out of defects in title which an **insured** had knowledge of at the date of issuance of such title insurance.

19. Arising out of any intentional breach of underwriting authority by an **insured** in the **insured's** capacity as a title insurance agent.

### SECTION IV: CONDITIONS – CLAIMS

**A. AWARENESS OF CIRCUMSTANCES**

If during the **policy period** an **insured** becomes aware of any circumstance he or she believes might result in a **claim** or could reasonably have foreseen might result in a **claim**, the **insured** shall immediately and in all instances prior to the expiration of the **policy period**, give written notice to us of the particulars of:

1.  The nature and dates of the specific act, error, omission or other fact, circumstance or situation giving rise to the potential of a **claim**, including, without limitation, the identity of each **insured** who participated and/or had supervisory responsibility for the matter and the reasons why it seems foreseeable that the matter may give rise to a **claim**;

2.  The identity of each potential claimant and the alleged injury or damage which has resulted or may result from such circumstance and the steps, if any, undertaken or proposed to be undertaken to mitigate **damages**; and

3.  The conditions under which the **insured** first became aware of such circumstance.

This policy shall then apply to any **claim** that is subsequently made against the **insured** and arises out of the fact, circumstance or situation reported as a notice of circumstances.

Written notice shall be provided to us at the address specified in the notice endorsement attached to this policy.

**B. NOTICE OF CLAIM**

1.  Reporting of a **claim** made against an **insured**

   If, during the **policy period** or applicable **extended reporting period**, a **claim** is made against an **insured**, you must give written notice in accordance with paragraph 2. below.

2.  **Insured's duties in the event a claim is received by an insured**

     a.   You and any other involved **insured** must see to it that we are notified immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or within any applicable **extended reporting period** of any **claim** made against you. To the extent possible, written notice should include:

       i.   The specific **claim** including the date the **claim** was made and or received; and

       ii.   The **damages** that may reasonably result.

  b.  You and any other involved **insured** must:

       i.   Immediately send us copies of any demands, tolling agreements, complaints, notices, summonses or similar documents received in connection with the **claim**;

       ii.   Authorize us to obtain records and other information;

       iii.   Provide us with such information and cooperation as we may reasonably require in the investigation, evaluation, settlement or defense of the **claim** or suit; assist in making statements, in the conduct of suits or similar legal proceedings, attend hearings, depositions, and trials, assist on securing and giving evidence and obtaining the attendance of witnesses;

       iv.   Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to an **insured** because of **damages** to which this insurance may also apply; and

       v.   Submit to an examination or interrogation under oath if requested by us.

  c.  No **insured** will, except at their own cost, voluntarily make a payment, assume any obligation, assume or admit liability, settle any **claim** or incur any expense without our prior written consent.

## C.  FALSE OR FRAUDULENT CLAIMS

If any **insured** notifies us of a **claim** knowing it to be false or fraudulent, this policy shall become void.

## D.  SUBROGATION

When any payment is made under this policy, we shall be subrogated to the **insured's** right of recovery in connection with that payment. Each **insured** shall do whatever is necessary to secure the right of recovery and shall do nothing to waive or prejudice such right.

**We** shall not exercise our rights of subrogation against an **insured** under this policy unless such **insured** has:

**1.**  obtained any personal profit, remuneration or advantage to which such **insured** was not legally entitled, or

**2.**  committed a criminal or fraudulent act or omission or any willful violation of law,

if a judgment or other final adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

## E.  NO ACTION AGAINST COMPANY

No action shall lie against us, unless, as a condition precedent, the **insured** has fully complied with all the terms of the policy, and the amount of the **insured's** obligation to pay shall have been fully determined either:

**1.**  By written agreement of the **insured**, the claimant, and us; or

**2.**  By final judgment against the **insured**.

## F.  ALLOCATION

If a **claim** is made that includes both covered and non-covered matters, or a **claim** is made against covered and non-covered parties, we and the **insureds** shall use reasonable efforts to achieve a fair and reasonable allocation based upon such relative exposure of such covered and non-covered matters and/or the proportionate fault of such covered and non-covered parties.

We shall advance on a current basis all **claims expense** in excess of the deductible amount incurred with respect to such **claim** prior to the final disposition of such **claim**; provided, however, that the foregoing shall not preclude us

from subsequently allocating **claims expense** pursuant to this provision and shall not apply to or create any presumption with respect to the allocation of **damages**.

## SECTION V: GENERAL CONDITIONS

### A. CANCELLATION

1. You may cancel this policy by returning it to us. You may also cancel this policy by written notice to us stating at what future date cancellation is to be effective.

2. We may cancel or non-renew this policy by written notice to you at the address last known to us. We will provide written notice at least sixty (60) days before cancellation is to be effective. If we cancel this policy because you have failed to pay a premium when due, this policy may be canceled by us by mailing to you written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this policy or the effective date and hour of cancellation stated in the notice shall become the end of the current **policy period**. Delivery (where permitted by law) of such written notice either by you or by us shall be the equivalent of mailing.

3. If we cancel this policy, the earned premium shall be computed pro rata. If you cancel this policy, we may retain a proportion of the premium greater than pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation

### B. OTHER INSURANCE

This insurance is excess over any other valid and collectible insurance available to any **insured** unless other insurance is written only as specific excess insurance over the **limit of liability** provided in this policy.

Coverage for **damages** and **claims expense** arising out of **non-profit services** shall be specifically excess of and not contribute with any insurance or indemnity available from or provided by the **non-profit entity**. Payment by the insurer or any insurance company controlling, controlled by or under common control with the insurer under any other insurance policy as a result of such **claim** shall reduce, by the amount of such payment, the insurers' **limit of liability** available under this policy for such **claim**.

### C. ASSIGNMENT

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death of an individual **named insured**.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of their duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will assume your rights and duties.

### D. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The **named insured** shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by an endorsement issued by us as part of this policy.

### E. APPLICATION

By accepting this policy, you warrant:

1. The statements and representations in the application submitted to us are accurate and complete: and

2. We have issued this policy in reliance upon your statements and representations.

## F. CHOICE OF LAW

This policy in all matters and issues collateral thereto shall be governed by laws of New York applicable to contracts entered into and performed entirely within New York with respect to the determination of any **claim**, dispute or disagreement which may arise out of the interpretation, performance or breach of this policy, and will be subject to enforcement and interpretation solely in the appropriate courts of New York.

## G. CONFORMITY TO STATUTE

The terms of this policy, which are in conflict with the statutes of the state wherein this policy is delivered, are hereby amended to conform to such statute.

## H. LIBERALIZATION CLAUSE

If we adopt any revision that would broaden the coverage under the policy without additional premium at any time during the policy period, the broadened coverage will immediately apply to this policy.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Lisa Levin, Secretary                Douglas Elliot, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN



## U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at — http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

# IMPORTANT POLICYHOLDER NOTICE

As a Hartford insured, you have access to a valuable risk management consultation hotline at no extra charge. The HART-PRO hotline can help you avoid or mitigate a lawsuit.

HART-PRO can be reached at 1-866-HART-PRO and insureds are entitled to two free hours of consultation with an attorney from Lewis, Brisbois, Bisgaard & Smith, LLP. All calls are confidential and your identity will not be reported to The Hartford.

The HART-PRO hotline is designed to:

- Help prevent a claim from being made
- Try to limit the exposure of a potential claim

We hope you take advantage of this valuable service offered free of charge exclusively to Hartford Professional Liability customers.

Thank you for choosing The Hartford.



**Producer Compensation Notice**

You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

**ENDORSEMENT NO:**

**This endorsement, effective 12:01 am, 1/26/2017 forms part of
policy number** LS 1621169

**issued to:** Law Office of John S. Xydakis

**by:** Twin City Fire Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ILLINOIS CANCELLATION AND NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

The Cancellation provision of the Policy is deleted and replaced by the following:

NOTICE OF CANCELLATION

A.     The **Insured** may cancel this Policy by mailing to the **Insurer** advance written Notice of Cancellation stating when thereafter such cancellation shall be effective.

B.     If this Policy has been in effect for sixty (60) days or less, the **Insurer** may cancel this Policy by mailing to the **Insured** written Notice of Cancellation at least:

     1.     ten (10) days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or

     2.     thirty (30) days before the effective date of cancellation if the **Insurer** cancels for any other reason.

C.     If this Policy has been in effect for more than sixty (60) days, the **Insurer** may cancel this Policy only for one or more of the following reasons:

     1.     Nonpayment of premium;

     2.     The Policy was obtained through a material misrepresentation;

     3.     The **Insured** or other **Insured(s)** have violated any of the terms and conditions of the Policy;

     4.     The risk originally accepted has measurably increased;

     5.     Certification to the Director of Insurance of the loss of reinsurance by the **Insurer** which provided coverage to the **Insurer** for all or a substantial part of the underlying risk insured; or

     6.     A determination by the Director that the continuation of this Policy could place the **Insurer** in violation of the insurance laws of this State.

D.   If the **Insurer** cancels this Policy based on one or more of the above reasons except for nonpayment of premium, the **Insurer** will mail written Notice of Cancellation to the **Insured** at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the **Insurer** will mail notice at least ten (10) days before the effective date of cancellation.

E.   The **Insurer** will mail the Notice of Cancellation to the **Insured** and the agent or broker at the last addresses known to the **Insurer**.

F.   Notice of Cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The **Policy Period** will end on that date.

G.   If this Policy is cancelled, the **Insurer** will send the **Insured** any premium refund due. If the **Insurer** cancels, the refund will be pro rata. If the **Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the **Insurer** has not made or offered a refund.

H.   The **Insurer** will maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

The following provision is added:

NOTICE OF NONRENEWAL

A.   If the **Insurer** decides not to renew this Policy, the **Insurer** will mail written notice stating the reason for non-renewal to the **Insured's** last mailing address known to the **Insurer** at least sixty (60) days before the expiration date of the Policy. A copy of the notice will also be sent to:

1.   The broker, if known to the **Insurer**, or the agent of record; and

2.   The last known mortgagee or lien holder at the last mailing address known to the **Insurer**.

B.   This paragraph does not apply if the **Insurer** has manifested a willingness to renew directly to the **Insured**.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

# IMPORTANT INFORMATION FOR
# ILLINOIS POLICYHOLDERS

IN THE EVENT YOU NEED TO CONTACT SOMEONE ABOUT THIS POLICY, PLEASE CONTACT YOUR HARTFORD AGENT. If you have additional questions, you may contact The Hartford at the address stated below.

SERVICING OFFICE:

Compliance DepartmentThe Hartford
Hartford Financial Products
2 Park Avenue, 5th Fl.
New York, NY 10016
(212) 277-0400

If you have been unable to contact or obtain satisfaction from your agent or from The Hartford's servicing office, you may contact the Illinois Department of Insurance at the address below.

ILLINOIS DEPARTMENT OF INSURANCE
Consumer Services Section
Springfield, IL 62767

Written correspondence is preferable so that a record of your inquiry is maintained.

**PLEASE MAKE SURE TO INCLUDE YOUR POLICY NUMBER IN ANY CORRESPONDENCE.**

*Douglas Elliot*

Douglas Elliot, President

**This endorsement, effective 12:01 am,** 1/26/2017 **forms a part of policy number:** LS 1621169

**issued to:** Law Office of John S. Xydakis

**by:** Twin City Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASBESTOS EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

This policy does not apply to **personal injury**, **bodily injury**, or **property damage** arising out of asbestos including but not limited to:

1. inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. the use of asbestos in constructing or manufacturing any goods, products, or structures; or

3. the removal of asbestos from any goods, products, or structures; or

4. the manufacture, encapsulation, transportation, storage, handling, distribution, sale, application, mining, consumption or disposal of asbestos or goods or products containing asbestos.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement, effective 12:01 am,** 1/26/2017 **forms a part of policy number:**  LS 1621169

**issued to:** Law Office of John S. Xydakis

**by:**  Twin City Fire Insurance Company

## MAILING ADDRESS FOR NOTICE ENDORSEMENT

I.       **Notice of Claim or Wrongful Act**

A.   It is hereby understood and agreed that a notice of any claim or wrongful act shall be given in writing to the following:

*The Hartford*
*Claims Department*
*Hartford Financial Products*
*277 Park Avenue*
*New York, New York 10172*

*Facsimile: 917-464-6000*

*Email: Hfpclaims@TheHartford.com*

II.      **All Other Notices**

A.   **All notices for a claim or wrongful act must be mailed to the address as specified above in Item (I) of this endorsement.**

B.   It is hereby understood and agreed that all notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*Target Professional Programs*
*1230 East Diehl Road,*
*Suite 350*
*Naperville, IL 60563*

*Facsimile:  (630) 961-0284*

*Email: Lawyerprogram@TargetProIns.com*

**All other terms and conditions of the policy remain unchanged.**

ENDORSEMENT NO:

**This endorsement, effective 12:01 am,** 1/26/2017 **forms a part of policy number:** LS 1621169

**issued to:** Law Office of John S. Xydakis

**by:** Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NETWORK SECURITY, DATA BREACH AND THEFT OF DATA COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**LAWYERS' PROFESSIONAL LIABILITY POLICY**

1. **SECTION I. SCOPE OF COVERAGE, A. COVERAGE AGREEMENT** is deleted and replaced by the following:

   **A. COVERAGE AGREEMENTS**

   **A.1 LAWYERS PROFESSIONAL SERVICES COVERAGE**

   We will pay on behalf of an **insured**, subject to the **limit of liability**, such **damages** and **claims expense** in excess of the applicable deductible amount for **claims** made during the **policy period** or applicable **extended reporting period** and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or applicable **extended reporting period**. The **damages** must arise out of a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

   **A.2 NETWORK SECURITY WRONGFUL ACT COVERAGE**

   We will pay on behalf of an **insured**, subject to the **limit of liability**, such **damages** and **claims expense** in excess of the applicable deductible amount for **claims** made during the **policy period** or applicable **extended reporting period** and reported to us immediately, but in no event later than sixty (60) calendar days after the expiration of the **policy period** or applicable **extended reporting period**. The **damages** must arise out of a **network security wrongful act** in the rendering of or failure to render **professional legal services** for others by you or on your behalf provided always that:

   a. such **claim** arises solely from a **network security wrongful act** that occurred on or after the **retroactive date**; and

   b. with respect to such **claim**, no **insured** as of the inception date of this policy was aware of **any network security wrongful act**, fact, circumstance or other situation that he or she knew might result in a **claim** or could reasonably have foreseen might result in a **claim**.

 © 2015, The Hartford

All actual or reasonably suspected **identity theft** from **unauthorized access or use** which has a common event, cause, circumstance or condition will be classified as one event and any associated **theft of data expenses** will be subject to the **limit of liability** and deductible amount of the policy in which the **unauthorized access or use** was first reported to the us.

### A.3 DATA BREACH AND THEFT OF DATA EXPENSES EXTENSION

We will pay on behalf of the **insured** reasonable and necessary **data breach and theft of data expenses**, subject to the sub limit of liability for **data breach and theft of data expenses**, as set forth below, and in excess of the **data breach and theft of data expense** deductible amount, incurred by the **insured** that are the direct result of an actual or reasonably suspected **identity theft** from **unauthorized access or use** that first takes place on or after the **retroactive date** as stated in the Declarations and is discovered by any **insured** during the **policy period**. Coverage for such expenses shall be available regardless of whether a **claim** has been made, provided that notice is given to us as required under the notice provisions set forth in Section **IV: CONDITIONS - CLAIMS**.

II.  **SECTION I. SCOPE OF COVERAGE, B. DEFINITONS**, is amended by the addition of the following:

- **Computer System** means computer hardware (including laptops, smart phones, memory devices or personal digital assistants), software applications and tools (including licensed software), middleware, **websites**, and related electronic backup, but only if:

  **a.** owned or leased, and operated, by the **insured**; and

  **b.** connected to the **insured** computer network.

- **Credit Monitoring and Notification Expenses** means reasonable and necessary costs incurred by the **insured** in connection with a statutory or regulatory mandate requiring credit monitoring or notice to specified individuals in compliance with state or United States federal data privacy laws or regulations.

- **Crisis Management Expenses** means those services performed by a public relations firm, crisis management firm or law firm hired or appointed by us, to minimize potential harm to the **insured** arising from a **network security wrongful act** as defined above.

- **"Cyber Investigation Expenses** means:

  **a.** those reasonable and necessary expenses the **insured** incurs to hire a **Third Party** computer security expert to conduct an investigation of its **computer system** to determine the source or cause of the **unauthorized access or use** that gave rise to the actual or reasonably suspected **identity theft** which may require the **insured** to comply with **Notification Laws** and to determine the extent to which **nonpublic personal information** was accessed as a result of such **unauthorized access or use**; or

  **b.** fees charged by a **Third Party** attorney to determine the applicability of and actions necessary by the **insured** to comply with **notification laws** due to an actual or reasonably suspected **identity theft** resulting from **unauthorized access or use**.

  **Cyber Investigation Expenses** does not include compensation, fees, benefits, overhead, or other charges or expenses of any **insured**.

 © 2015, The Hartford

- **Data Breach and Theft of Data Expenses** means **Crisis Management Expenses, Credit Monitoring and Notifications Expenses** and **Cyber Investigation Expenses**.

- **Denial of Service** means the inability of an authorized entity to gain access to the **insured's** online marketplace, to conduct E-commerce, transmit E-mail or to affect File Transfers.

- **Identity Theft** means the unauthorized taking or misuse of **non public personal information** from the **insured's computer system**, the access to which is restricted by reasonable security measures.

- **Malicious Code** means unauthorized and either corrupting or harmful software code, including but not limited to, computer viruses, Trojan horses, worms, logic bombs, spy-ware, malware or spider ware.

- **Network security wrongful act** means an actual or alleged negligent act, error or omission committed in connection with the performance or failure to perform **professional legal services**, which results in any of the following:

    a. **Denial of service**;

    b. the inadvertent transmission of a **malicious code**;

    c. **Identity theft**; or

    d. **Unauthorized access or use**.

    Solely with respect to the **data breach and theft of data expenses** coverage afforded in this endorsement, the definition of **network security wrongful act** is further amended by deleting the words: "committed in connection with the performance or failure to perform **professional legal services**".

- **Non public personal information** means a natural person's first name and last name in combination with any one of the following: 1) social security number; 2) medical or healthcare information or data; 3) drivers license number or state identification number; or 4) financial account information that would permit access to that individual's financial account.

- **Notification Laws** means any data privacy laws to which the **insured** is subject that requires an **insured** storing **non public personal information** to provide notice to specified individuals of any actual or reasonably suspected **identity theft** with respect to such **non public personal information**.

- **Unauthorized Access or Use** means:

    a. the gaining of access to a **insured's computer system** by any person who is not authorized to gain such access; or

    b. the use of an **insured's computer system** by any **insured** outside the scope of his or her employment.

- **Website** means the software, content and other materials accessible via the internet at a designated Uniform Resource Locator address owned by the **insured**.

III. **SECTION I. SCOPE OF COVERAGE, D. LIMIT OF LIABILITY AND DEDUCTIBLE** is amended by the addition of the following:

> Coverage provided for **network security wrongful act claims** is subject to the **limit of liability** as stated in the Declarations and is part of and not in addition to such limits.

> **Data Breach and Theft of Data Expense Extension:**

> Notwithstanding any other provisions of this policy, but subject to all terms and conditions of this policy, we shall pay **data breach and theft of data expenses** up to a maximum payment by us of the **data breach and theft of data expenses sub-limit of liability** set forth below. This amount will be included within and shall serve to reduce the limit of liability. Our obligation to pay **data breach and theft of data expenses** under this policy applies only to the amount of such expenses which are in excess of the **data breach and theft of data expenses Deductible** set forth below.

IV. The first sentence of Section **III. EXCLUSIONS** is deleted and replaced with the following:

> **EXCLUSIONS –** This insurance does not apply to **claims** or **claims expense** or **data breach and theft of data expense**:

V. **SECTION III. EXCLUSIONS**, item 3. is deleted and replaced with the following:

> 3. Arising out of any **bodily injury** or **property damage**; provided however, that this exclusion will not apply to a **claim** for mental injury, mental tension, mental anguish, or emotional distress directly resulting from a **network security wrongful act**;

VI. **SECTION III. EXCLUSIONS** is amended by the addition of the following:

- based on, arising out of or in any way related to any unsolicited dissemination of information by faxes or e-mails where prohibited by law; including but not limited to actions brought under the Telephone Consumer Protection Act, Fair and Accurate Credit Transactions Act of 2003, Fair Debt Collections Practices Act or any federal or state anti-spam statutes, and/or any other similar federal or state statute, law or regulation relating to a person's or entity's right of seclusion;

- arising out of the actual or alleged violation of any state or federal antitrust, restraint of trade, or unfair competition laws;

- based on, arising out of or in any way related to any **network security wrongful act** or shortcoming in a **computer system** that any **insured** knew about prior to the inception of this **policy period**;

- based on, arising out of or in any way related to any **insured's** failure to take steps to use, design, maintain or upgrade a computer system in order to prevent or avoid a **network security wrongful act**;

- based on, arising out of or in any way related to the inability to use, or lack of performance of, software:

> a. due to expiration, cancellation, or withdrawal of such software;

> b. that has not yet been released from its developmental state; or

    c.   that has not passed all test runs or proven successful in applicable daily operations.

- based on, arising out of or in any way related to any failure to use best efforts to: 1) install commercially available software product updates and releases; or 2) to apply security related software patches, to computers and other components of the computer system;

- based on, arising out of or in any way related to any Named Viruses as identified by governmental authorities and any software or security technology provider;

- based on, arising out of or in any way related to any **insured's** intentional failure to disclose the loss of **nonpublic personal information** arising from a **network security wrongful act** if any **insured** was aware of such **network security wrongful act;**

- based on, arising out of or in any way related to any war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power;

- based on, arising out of or in any way related to any fees, expenses, or costs, paid to or charged by the **insured;**

- based on, arising out of or in any way related to any intentional or knowing violation of the **insured's** privacy policy.

- arising out of any electrical or mechanical failures and/or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout; and outages to gas, water, telephone, internet, cable, satellite, telecommunications or other infrastructure;

- based on, arising out of or in any way related to any **malicious code** other than **damages, claims expense** or **data breach and theft of data expenses** directly resulting from the inadvertent transmission of **malicious code;** or

- based on, arising out of or in any way related to any **insured's** intentional or knowing violation of the **insured's** employment practice policy, including but not limited to background checks for employees and limiting of access to **non public personal information.**

- arising out of the actual or alleged violation of any state or federal unfair competition laws or consumer protection laws other than **damages, claims expense** or **data breach and theft of data expenses** directly resulting from any such violation which constitutes a **network security wrongful act;**

VII. **SECTION IV. CONDITIONS - CLAIMS,** is amended by the addition of the following:

    C.  **Data Breach and Theft of Data Expense Extension Notice**

        As a condition precedent to coverage, the **named insured** shall report to us any **network security wrongful act** for which it seeks **data breach and theft of data expenses** coverage under this policy. Such notice must be reported within thirty (30) days of when the **insured** first discovers the **network security wrongful act.** The **insured** shall obtain prior written approval from us prior to incurring **data breach and theft of data expenses.**

        In the event that **data breach and theft of data expense** coverage is sought, the request for such **data breach and theft of data expense** coverage shall be deemed an Awareness of Circumstances under Section IV. **CONDITIONS - CLAIMS,** Paragraph A. and any **claim** arising

therefrom shall be deemed to be first made during the **policy period**.

VIII. **DECLARATIONS** is amended by the addition of the following:

**Data Breach and Theft of Data Expenses Deductible** $5,000.

**Data Breach and Theft of Data Expenses Sub-Limit of Liability** $25,000.00 in the aggregate.

All other terms and conditions remain unchanged.

Douglas Elliot, President

ENDORSEMENT NO:

This endorsement, effective 12:01 am, **1/26/2017** forms a part of policy number:  **LS 1621169**

**issued to:**  Law Office of John S. Xydakis

**by:**  Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WORKPLACE VIOLENCE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY**

I.  **SECTION II: COVERAGE EXTENSIONS** is amended by the addition of the following:

- **WORKPLACE VIOLENCE**

  We will pay on behalf of the **named insured** any **workplace violence expenses** resulting from a **workplace violence action** occurring during the **policy period** and reported to us, pursuant to **SECTION IV. CONDITIONS - CLAIMS**.

  Our maximum aggregate liability for all such **workplace violence expenses** shall be the Sub-Limit of Liability of $50,000.00. This Sub-Limit shall be part of, and not in addition to, the Aggregate Limit of Liability for this policy shown on the declarations. Payment of **workplace violence expenses** by the Insurer shall reduce such Aggregate Limit of Liability. No deductible shall apply to the **workplace violence expenses**.

II.  Solely for the purpose of the coverage provided for **workplace violence expenses, Section I: SCOPE OF COVERAGE, B. DEFINTIONS** is amended by the addition of the following:

- **Business interruption expenses** means the amount calculated as set forth below for a period of time commencing the day the **workplace violence action** occurs and ending on the earlier of ninety (90) days following such date or the date that the **named insured** restores operations, with due diligence and dispatch, to the level that existed prior to the **workplace violence action**:

  (1)  The sum of:
  - a)  net profits before income taxes that would have been earned had no **workplace violence action** occurred;
  - b)  the actual costs of continuing the activities which are necessary for the **named insured** to resume operations with substantially the same quality of service which existed immediately preceding the **workplace violence action**; and
  - c)  reasonable expenses which would not have been incurred except for such **workplace violence action** and which were incurred by the **named insured** for the sole purpose of reducing **business interruption expenses** described in 1(a) or 1(b), not to exceed the amount of actual reduction of such **business interruption expenses**.

  (2)  Less the sum of:
  - a)  all recoveries, other insurance, suretyship and other indemnity which cover **business interruption expenses**; and
  - b)  the amount by which the **named insured** reasonably could have, but failed to, reduce **business interruption expenses**.

  © 2016, The Hartford

- **Employee** means any natural person while such person was or is an employee of the **named insured** including any part time, seasonal, temporary, leased, or loaned employee. **Employee** does not include any **manager**.

- **Employee expenses** means the reasonable fees and expenses for, or cost of:

  (1) the salary or wages, for up to ninety (90) days following the date the **workplace violence action** occurs, that the **named insured** pays **individual insureds** victimized by the **workplace violence action** and unable to continue to work because of such **workplace violence action**. The **individual insured**'s salary or wages in effect at the time of the **workplace violence action** shall apply;

  (2) the salary or wages, for up to ninety (90) days following the date the **workplace violence action** occurs, that the **named insured** pays a newly hired person(s) or temporary **employee(s)** to work because of such **workplace violence action**; however such salary or wage shall not exceed the salary or wage of the relevant victimized **individual insured**(s) in effect at the time of the **workplace violence action**;

  (3) reasonable expenses for a counseling seminar for **individual insureds** conducted by an independent consultant within ninety (90) days following the **workplace violence action**;

  (4) reasonable expenses for the hiring of an independent security guard for up to thirty (30) days following the **workplace violence action**; or

  (5) reasonable expenses for the services of an independent security consultant for purposes of devising a security plan for the **named insured**.

- **Individual insured** means any:

  (1) **Employee**; or

  (2) Natural person who is neither an **employee** nor **manager** visiting the **premises** for a lawful purpose.

- **Manager** means any natural person while such person was or is a partner, owner, director, trustee, officer, principal, shareholder, or member of the **named insured** or any other individual with an ownership interest in the **named insured**;

- **Physical injury** means physical damage to a person's body caused by an external source.

- **Premises** means any building, facility, or property occupied by the **named insured** in conducting its operations.

- **Public relations firm expenses** means the reasonable and necessary fees charged by an organization specializing primarily in maintaining or restoring the public image of businesses or non-profit organizations, where such organization is retained to aid in the restoration of the **named insured** public image.

- **Workplace violence action** means any actual or alleged intentional and unlawful use of deadly force with an intent to cause harm that occurs at the **premises** that results in **physical injury**.

- **Workplace violence expenses** means:

  (1) **business interruption expenses**;

  (2) **employee expenses**; and

  (3) **public relation firm expenses**.

III. Solely for the purpose of the coverage provided for **workplace violence expenses**, **SECTION III: EXCLUSIONS** is amended by the addition of the following:

- We shall not pay any **workplace violence expenses:**

    (1)   based upon, arising from, or in any way related to war, invasion, insurrection, riot, rebellion, revolution, civil war, or military action; or

    (2)   based upon, arising from, or in any way related to the use or threat of force or violence occurring for the purpose of demanding money, securities, or property.

- The Insurer shall not pay any legal costs, attorneys fees, expenses, settlements, judgments, penalties or other amounts incurred as a result of any claim, suit or other legal proceeding brought against an **insured** in connection with a **workplace violence action**.

All other terms and conditions remain unchanged.

ENDORSEMENT NO:

**This endorsement, effective 12:01 am, 1/26/2017 forms a part of policy number:** LS 1621169

**issued to:** Law Office of John S. Xydakis

**by:** Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ILLINOIS POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Section III: EXCLUSIONS, is amended to include the following:

( )  based upon, arising from, or in any way related to any:

1.  actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**; or

2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, nuclear material or nuclear waste; or

3.  direction, request or voluntary decision that any insured monitor, clean up, remove, contain, treat, restore, recondition, recycle, or reclaim any real or personal property or water due in part or in whole to the presence or effect of **pollutants**.

Section I: SCOPE OF COVERAGE, paragraph B., is amended to include the following:

( )  **Pollutants** means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, and waste. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. **Pollutants** shall also mean any unlisted substance exhibiting characteristics of ignitability, corrosivity, reactivity or toxicity to a degree which would cause it to be so listed if the subject were to be addressed by the E.P.A. or state, county, municipal or other local government counterpart thereof.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

**This endorsement, effective 12:01 am,** 1/26/2017 **forms a part of policy number:** LS 1621169

**issued to:** Law Office of John S. Xydakis.

**by:** Twin City Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

I.  **OTHER INSURANCE**

SECTION V: GENERAL CONDITIONS, paragraph **B.**, OTHER INSURANCE, is deleted and replaced by the following:

If any **claim** noticed to the **insured** under this policy is insured by another valid policy or policies, then we shall not be liable under this policy for a greater proportion of such **claim** than the applicable **limit of liability** stated in the Declarations bears to the total applicable limit of liability of all valid and collectible coverage against such **claim**, unless this policy is written specifically as excess in which case the we shall only be liable for the **damages** and **claim expenses** that exceeds the sum of the total amount that all such other insurance would pay in the absence of this insurance.

II. **EXTENDED REPORTING PERIOD**

SECTION I: SCOPE OF COVERAGE, paragraph **F.**, EXTENDED REPORTING PERIODS, paragraph 1., is deleted and replaced with the following:

We will provide one or more **extended reporting periods** if we or you cancel or non-renew the policy for any reason.

III. **CLAIMS EXPENSES**

1.  **SECTION I : SCOPE OF COVERAGE,** paragraph **B.**, DEFINITIONS, paragraph 3., **Claim expenses,** is replaced with the following:

**Claims expense** means all reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim**, suit or proceeding arising in connection therewith, if incurred by us or by an **insured** with our written consent. **Claims expense** shall not include our or the **insured's** salaries, wages, remuneration, overhead or benefit expenses. **Claims expense** includes but is not limited to;

2.  **SECTION I: SCOPE OF COVERAGE,** paragraph **B.**, DEFINITIONS, paragraph 3., **Claim expenses,** paragraph b., is replaced with the following:

Interest on the entire amount of any judgment which accrues after the entry of judgment and before we have paid or tendered or deposited into court that part of the judgment. This interest will not reduce the **limit of liability**;

## IV.  SPOUSAL/DOMESTIC PARTNER LIABILITY COVERAGE

**SECTION II: COVERAGE EXTENSION**, is amended to include the following:

Spouse includes a party to a civil union recognized under Illinois law. Any use of the terms "spouse", "relative", "family", "immediate family", "dependent", or any other term descriptive of spousal relationships used in this Policy, includes a party to a civil union as recognized under Illinois law.

## V.  FALSE OR FRAUDULENT CLAIMS

**SECTION IV: CONDITIONS – CLAIMS**, paragraph **C.**, **FALSE OR FRAUDULENT CLAIMS**, is deleted in its entirety and replaced with the following:

If any **insured** notifies us of a **claim** knowing it to be false or fraudulent, this policy shall be cancelled by us .

## VI.  CHOICE OF LAW

**SECTION V: GENERAL CONDITIONS**, paragraph **F.**, **CHOICE OF LAW**, is deleted and replaced with the following:

This policy in all matters and issues collateral thereto shall be governed by laws of Illinois applicable to contracts entered into and performed entirely within Illinois with respect to the determination of any **claim**, dispute or disagreement which may arise out of the interpretation, performance or breach of this policy, and will be subject to enforcement and interpretation solely in the appropriate courts of Illinois.

## VII.  NOTICE

**SECTION V: GENERAL CONDITIONS**, is amended to include the following:

All notices to the **insured** shall be sent to all **Named Insureds** at the last address known to us.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President