**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-6387 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| LAW OFFICE OF JOHN S. XYDAKIS, P.C., et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Twin City Fire Insurance Company sold a professional liability insurance policy to John S. Xydakis, an attorney and one of the Defendants.[1]  Xydakis made two claims under the policy, based on lawsuits and motions filed against him in Illinois state court.  Plaintiff brought this action, seeking a declaration, pursuant to 28 U.S.C. § 2201, that Twin City owes no insurance coverage to Defendants for those claims, or in the alternative, seeking rescission of the insurance policy.  Before the Court is Defendants' motion [18] to dismiss pursuant to Rule 12(b)(1), on the grounds that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.  Also before the Court is Plaintiff's motion for leave to file a sur-reply [28].  In the Court's discretion, Plaintiff's motion for leave to file a sur-reply [28] is granted.  For the reasons stated below Defendants' motion to dismiss [18] is granted in part and denied in part.  Specifically, Counts I through IV are dismissed without prejudice to the extent that they make claims regarding Plaintiff's duty to indemnify Defendants; Defendants' motion is denied as to Counts I through IV to the extent that they make claims regarding Plaintiff's duty to defend

---

[1] The other Defendants are Xydakis's dissolved Illinois Professional Corporation and his sole proprietorship.

Defendants, and the motion is denied in its entirety as to Counts V through XI. Defendants are ordered to file their answer by September 30, 2019. This case is set for further status hearing on October 3, 2019 at 9:00 a.m.

## I.     Background[2]

Plaintiff Twin City is an insurance company formed under the laws of the State of Indiana with its principal place of business in Connecticut. Plaintiff conducts business in Illinois and within the geographical boundaries of this district.

Defendant Law Office of John S. Xydakis, P.C., is a dissolved professional corporation that was organized under the laws of Illinois and had its principal place of business in Chicago, Illinois. The Law Office of John S. Xydakis, P.C. was involuntarily dissolved by the Illinois Secretary of State on or about October 11, 2013. The sole member of the Law Office of John S. Xydakis, P.C. was John S. Xydakis, a citizen of Illinois. Defendant Law Office of John S. Xydakis is a sole proprietorship engaged in the practice of law in Illinois, with its principal place of business in Illinois. The sole proprietor of the Law Office of John S. Xydakis, is John S. Xydakis, who is a citizen of Illinois and an attorney licensed to practice law in the State of Illinois and who does business as the Law Office of John S. Xydakis.

Venue is proper in this district pursuant to 28 U.S.C. § 1391, as the case addresses coverage under an insurance policy issued in this district, related to claims pending against putative insureds within the geographical boundaries of this district. The Court's subject matter jurisdiction is in dispute and is the subject of the motion before the Court. While the parties are citizens of different

---

[2] When ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

states, Defendants deny that the amount in controversy exceeds $75,000.00. The Court discusses its findings on this issue below.

Plaintiff sold Defendants a professional liability insurance policy. Defendants made two claims under that policy, one related to *Fiona Chen Consulting v. Edward Schrock, et al.*,[3] which Plaintiff calls "The Chen Lawsuit," and one related to a series of lawsuits regarding a condominium association, which Plaintiff calls "The Spiegel Lawsuits."[4]

Briefly, *Fiona Chen Consulting v. Edward Schrock* involves a claim for unpaid invoices. Fiona Chen alleges that Xydakis retained her to perform expert work in another lawsuit, that they entered into an oral contract, and that Xydakis did not pay her. She seeks $390,180.18 in damages. See [1-1] at 25. The Spiegel Lawsuits are a separate set of cases brought by Marshall Spiegel, represented by Xydakis, against neighboring condominium owners, the condo association, and attorneys and law firms involved in the litigation. As a result of their litigation tactics, Spiegel and Xydakis faced three motions for sanctions pursuant to Illinois Supreme Court Rule 137. One motion requested $492,432.08 in attorneys' fees incurred through July 2018, plus $27,878 in increased insurance costs. [28-1] at 9. Another sought fees and costs of $194,595.65. [28-1] at 14. The third requested fees and costs of $279,015.90 (later increased to $378,310). [28-1] at 19.

Xydakis sought coverage from Plaintiff for liability in the Chen Lawsuit and for liability for the three motions for sanctions in the Spiegel Lawsuits. Plaintiff denies that it owes a duty to

---

[3] *Fiona Chen Consulting Company v. Edward Shrock, Law Office of John S. Xydakis, P.C., a dissolved Illinois Professional Corporation, John S. Xydakis, John S. Xydakis, d/b/a Law Office of John S. Xydakis, and Law Office of John S. Xydakis*, Case No. 17 L 5621, pending in the Circuit Court of Cook County, Illinois.

[4] *Marshall Spiegel and Chicago Title Trust Co., as Trustee of Trust Number 4179 v. Valerie Hall, et al.*, Case No. 15 L 10817, consolidated with *1618 Sheridan Rd Condo. v. Marshall Spiegel, et al.*, Case No. 16 L 3564, and *Marshall Spiegel v. William McClintic, et al.*, Case No. 15 CH 18825, all currently pending in the Circuit Court of Cook County, Illinois.

3

defend or a duty to indemnify to Defendants for either claim.  On September 19, 2018, Plaintiff brought this action seeking a declaratory judgment that Plaintiff owes Defendants no duty to defend or indemnify Defendants for the claims in the Chen Lawsuit, nor a duty to defend or indemnify Defendants for the claims in the three motions for sanctions.  See [1] at 10-18.  In the alternative, Plaintiff seeks rescission of the professional liability insurance policy it issued to Defendants.  [1] at 18-20.  Regarding subject matter jurisdiction, the Complaint alleges, "This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of costs and interest based [on] potential coverage obligation for the defense of, as well as sums sought in[,] the Chen Lawsuit and the Spiegel Motions for Sanctions, which Xydakis claims Twin City owes under the Policy."  [1] at 3.

On January 14, 2019, Defendants filed their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), which argues that Plaintiff has failed to demonstrate that the amount in controversy exceeds $75,000.  See [18] at 1.  In the alternative to dismissal, Defendants seek a stay of the federal case until the underlying state cases are resolved.  [18] at 7.  After the initial briefing was complete, Plaintiff filed a motion for leave to file a sur-reply [28], seeking to update the Court on developments in the Spiegel Lawsuits and attaching state court orders granting the three motions for sanctions.  See [28] and [28-1].

## II.    Legal Standard

When ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  "The district court may properly

4

look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Shorebank Dev. Corp.*, 182 F.3d at 554 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). On a Rule 12(b)(1) motion, as with a Rule 12(b)(6) motion, the court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 846 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. See *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). Where relevant, the Court also takes judicial notice of documents filed in the state court cases that form the basis of Defendant's insurance claims against Plaintiff, as described in detail below. See *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss" (citing *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016))); *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F. Supp. 3d 866, 868 (N.D. Ill. 2015) (court may take judicial notice of matters of public record without converting 12(b)(6) motion into motion for summary judgment).

The burden is on the party asserting that jurisdiction exists—here, Plaintiffs. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015).; see also *Gonzalez v. Bank of Am., N.A.*, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) ("the plaintiff bears the burden of establishing the basis for the court's jurisdiction"). Where, as here, the defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with

competent proof. *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (quotation omitted). The plaintiff must prove the "jurisdictional facts by a preponderance of the evidence." *Id.*, quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Dismissal is warranted only if it is a "legal certainty" that the amount in controversy is actually less than $75,000. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls [ ] if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible."); *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) ("If the removing party is able to meet this burden, then remand is appropriate only if the plaintiff can establish the claim is for less than the requisite amount to a legal certainty.").

## III. Analysis

### A. Costs of Indemnification

The first question is whether costs of indemnification count toward the amount in controversy requirement for federal subject matter jurisdiction. Defendants argues that they do not. Defendants are wrong, and Plaintiff has sufficiently alleged an amount in controversy exceeding $75,000.

A federal district court has diversity jurisdiction if the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States. 28 U.S.C. § 1332(a). In actions seeking declaratory or injunctive relief, it is well established that

the amount in controversy is measured by the value of the object of the litigation. *Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). The amount in controversy is measured from the date of filing or removal. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006); *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011).

The Seventh Circuit has held that indemnity exposure in an underlying claim or suit should be included in calculating the amount in controversy requirement for diversity jurisdiction. In *Meridian Sec. Ins. Co. v. Sadowski*, the Seventh Circuit found that a disagreement between an insurer and policy holder "about potential indemnity is part of a larger controversy that is neither conjectural nor speculative. [The insurer's] potential obligation to indemnify [the policyholder] was in controversy from the moment this suit began." 441 F.3d 536, 538–39 (7th Cir. 2006). Here, Plaintiff seeks a declaration that no coverage, defense or indemnity, is available to Defendants under the Twin City insurance policy for either the Chen Lawsuit or the sanctions motions in the Spiegel Lawsuits. Plaintiff's alleged obligation to defend and potential obligation to indemnify Defendants are "in controversy" and the cost of potential indemnification can be counted toward the amount in controversy. *Id.* at 539 (collecting cases in which courts count the potential outlay for indemnity toward the amount in controversy, whether or not adjudication about indemnity should be deferred until the state case is over).

Turning to the exact amount that is in controversy, the Court must rely on the costs of indemnification, as the record does not contain a quantified amount for the costs of defense in the underlying state cases. The costs of indemnification, however, easily exceed $75,000. In the Chen Lawsuit, Fiona Chen Consulting seeks $390,180.18 in damages from Xydakis. In the Spiegel

Lawsuits, various parties sought nearly $1 million[5] in fees and costs. For each of Defendants' insurance policy claims, Plaintiff has presented "competent proof" that the indemnification costs far exceed $75,000, and the amount in controversy requirement of federal subject matter jurisdiction is met. *McMillian*, 567 F.3d at 844.

### B. Ripeness

Defendant also asserts that the claims regarding a duty to indemnify are not ripe and therefore the Court should dismiss them. [18] at 2. In a dispute over insurance coverage, a duty-to-indemnify issue will not be ripe until liability has been established. *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); see also *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases and applying this rule to a declaratory judgment action). When a duty-to-indemnify claim is not ripe, the proper disposition is dismissal. *Hellman*, 610 F.3d at 375; *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); but see *Hess v. Travelers Cas. & Sur. Co. of Am.*, 2013 WL 623981, at *6 (N.D. Ill. Feb. 20, 2013) (entering summary judgment on duty-to-indemnify issue when the court had already devoted "considerable effort" to deciding the duty-to-defend question).

Here, at the time the Complaint was filed, both the Chen Lawsuit and the Spiegel Lawsuits were ongoing, and there had not been any finding of liability in these cases. As far as the Court is aware, there still has not been any finding of liability in the Chen Lawsuit, meaning the duty-to-indemnify claims related to the Chen Lawsuit are not ripe. Accordingly, Counts I through IV are dismissed without prejudice, to the extent that they make claims regarding Plaintiff's duty to indemnify Defendants. *Hellman*, 610 F.3d at 375; see also *Scottsdale Ins. Co. v. Polo Masonry*

---

[5] The exact total was $993,921.63. The Court draws this from the amounts that the Spiegel Lawsuit litigants sought when they filed their motions for sanctions, not the amounts that the state court judge ultimately awarded. See [28-1].

*Builders, Inc.*, 2018 WL 3583870, at *3 (N.D. Ill. July 25, 2018) (dismissing duty-to-indemnify claims because the state court had not yet made any findings of liability in the underlying state lawsuit); *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 2019 WL 3935043, at *4 (N.D. Ill. Aug. 20, 2019) (same).

In contrast, there have been findings of liability—more than $1 million worth—in the motions for sanctions in the Spiegel Lawsuits. See [28-1] at 2. These state court decisions were issued after the Complaint in this case was filed, but that is no bar to considering them. "Because ripeness is 'peculiarly a question of timing,' a court determines ripeness as of the date of its decision, not the date the lawsuit was filed." *Church of Our Lord & Savior Jesus Christ v. City of Markham, Illinois*, 913 F.3d 670, 677 (7th Cir. 2019) (quoting *Buckley v. Valeo*, 424 U.S. 1, 114–118 (1976). As a result, questions of indemnity regarding the motions for sanctions in the Spiegel Lawsuits are ripe, and Defendants' motion to dismiss is denied with regard to these claims.

### C. Declaratory Judgment on Issues Intertwined with State Court Merits

In the alternative to dismissal, Defendants seek a stay of the federal action. Defendants claim that a declaratory judgment is improper because it "may require factual findings that might conflict with the State Court suits" and ask that the Court stay this suit until the state court cases are decided on their merits. [18] at 4 (quotation omitted).

Under Illinois law,[6] the so-called *Peppers* doctrine provides that "it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation." *Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1275 (2d Dist. 2006) (citing *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 30 (Ill. 1976)). In *Peppers*, the Illinois Supreme Court held that the trial court in an insurance coverage case

---

[6] Plaintiff asserts, and Defendants do not dispute, that Illinois law governs the substantive coverage issues in this case.

abused its discretion when it found that the insured (the defendant in an underlying personal injury action) had intentionally caused injury to the plaintiff in the underlying litigation. 355 N.E.2d at 29–30. The Illinois Supreme Court held that this issue was one of the "ultimate facts upon which recovery is predicated in the [underlying] personal injury action against [the defendant], which had been filed considerably before the declaratory judgment action had been instituted." *Id.* at 30. The court reasoned that such a determination regarding the declaratory judgment action was "premature," and that the collateral estoppel effect of any factual determinations in the declaratory judgment action would interfere with the adjudication of the underlying action. *Id.* Thus, in insurance coverage litigation, the *Peppers* doctrine "specifically precludes determination of any ultimate facts upon which liability or recovery might be predicated in the underlying case." *Landmark Am. Ins. Co. v. NIP Grp., Inc.*, 962 N.E.2d 562, 579 (1st Dist. 2011); see also *Scottsdale Ins. Co. v. City of Waukegan*, 2014 WL 3600517, at *2 (N.D. Ill. July 21, 2014).

At the same time, the *Peppers* doctrine does allow declaratory judgments on issues that do not decide an ultimate fact in the underlying case. See *Fid. & Cas. Co. of New York v. Envirodyne Engineers, Inc.*, 461 N.E.2d 471, 476 (1983) ("the nature of Envirodyne's services at the job site was not an issue of ultimate fact and that therefore, the trial court properly determined the issue of coverage in the declaratory proceeding by looking to facts beyond those contained in the underlying complaint"); *Landmark*, 962 N.E.2d at 579 (allowing declaratory judgment on an issue that could be resolved by simply comparing the allegations of the complaint with the language of the insurance policy); *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016) (citing *Envirodyne*, 461 N.E.2d at 474-75); *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 890 (N.D. Ill. 2018) (citing *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1020 (2010)) ("When an insurer files a declaratory proceeding challenging its duty to defend, the court may consider

evidence beyond the underlying complaint so long as the court does not determine an issue critical to the underlying action."). The claims in the complaint do not require judgments on any ultimate facts in the state court lawsuits, meaning that the *Peppers* doctrine does not bar this case from moving forward and a stay is neither required nor appropriate.

The claims related to the Chen Lawsuit deal with: the insurance policy's retroactive date (Count I); whether the Chen Lawsuit is a "claim" for "damages" arising from a "personal injury" in rendering "professional legal services" as those terms are defined in the insurance policy (Count II); whether one of the defendants is not an "insured" as defined in the insurance policy (Count III); and whether, before the inception of the insurance policy, Xydakis knew of acts or omissions that might be the basis of a claim against him (Count IV). None of those topics bear on the ultimate issues in the Chen Lawsuit, which focuses on the existence and breach of an alleged oral contract.

Turning to the Spiegel Lawsuits and Counts V through X, the motions for sanctions against Xydakis and his client have been resolved. The state court has made its findings of fact on the issue of sanctions, and resolving the claims in the Complaint will not interfere with the already-adjudicated motions in the state case. See *Peppers*, 355 N.E.2d at 29–30. Finally, Count XI seeking rescission of the insurance policy, deals with whether Xydakis made material misrepresentations in his application for the policy. That topic is also unrelated to any of the ultimate facts at issue in the underlying state cases

Ultimately, none of the claims in the Complaint require factual findings that might conflict with the state court suits. A declaratory judgment on the issues presented in the Complaint is not improper at this time, and the Court declines to stay the case.

11

**IV.      Conclusion**

In the Court's discretion, Plaintiff's motion for leave to file a sur-reply [28] is granted.  For the reasons stated above, Defendants' motion to dismiss [18] is granted in part and denied in part. Specifically, Counts I through IV are dismissed without prejudice to the extent that they make claims regarding Plaintiff's duty to indemnify Defendants; Defendants' motion is denied at to Counts I through IV to the extent that they make claims regarding Plaintiff's duty to defend Defendants, and the motion is denied in its entirety as to Counts V through XI.  Defendants are ordered to file their answer by September 30, 2019.  This case is set for further status hearing on October 3, 2019 at 9:00 a.m.

Dated: September 16, 2019

_____
Robert M. Dow, Jr.
United States District Judge