IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 18 C 6387 |
| v. | ) ) | Judge Virginia M. Kendall |
| LAW OFFICE OF JOHN S. XYDAKIS, P.C., et al., | ) ) ) ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Twin City Fire Insurance Company sold a malpractice insurance policy to John S. Xydakis, an attorney and one of the Defendants.[1] Xydakis made claims under the policy based on lawsuits and motions filed against him in Illinois state court. Twin City seeks a declaratory judgment that it owes no insurance coverage to Defendants for these claims or, in the alternative, rescission of the policy. Twin City moves for summary judgment. (Dkt. 121). For the following reasons, the Motion is granted. [121]

Local Rule 56.1 requires that the party opposing summary judgment file and serve on the moving party "a response to the LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement." N.D. Ill. R. 56.1(b)(2) (as amended Feb. 18, 2021). "When a responding party's

---

[1] The other Defendants are Xydakis's dissolved Illinois professional corporation, his sole proprietorship, and Tiberiu Klein, an employee of Xydakis. (Dkt. 122 ¶¶ 3–5; Dkt. 45 at 5; Dkt. 71 at 1–2). The Court uses "Xydakis" to refer collectively to Xydakis, his dissolved professional corporation, and his sole proprietorship. The Court uses "Defendants" to refer to all defendants.

1

statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Xydakis's LR 56.1(b)(2) Response to Twin City's 56.1(a) Statement of Material Facts fails to comply in all respects with LR 56.1. (*See* dkt. 144 at 13–14). Xydakis's entire response consists of three numbered paragraphs containing legal arguments objecting to the admissibility of Twin City's Exhibit B as evidence. (*Id.* (citing Dkt. 122-2 at *2–6)). He disputes none of Twin City's facts; nor does he submit admissible evidence to support denial of any fact. Therefore, the Court deems admitted all Twin City's statements of fact as undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015); *Ammons v. Uniform Servs.*, 368 F.3d 809, 817–18 (7th Cir. 2004); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000).

Moreover, Xydakis's argument as to Twin City's Exhibit B's admissibility is off track. In the affidavit to which Xydakis objects, Twin City's counsel avers that several publicly-filed documents were either served on Twin City or retrieved from the Cook County Clerk of Court or the Illinois Appellate Court. (Dkt. 122-2 at 1–5). The Exhibit then attaches the referenced court filings and orders. (*Id.* at 8–482). Xydakis contends that Twin City's counsel cannot properly authenticate the documents attached to the affidavit because he has no personal knowledge of the statements therein. (Dkt. 144 at 1 ¶ 2).

But Twin City does not offer these documents for the truth of the statements they contain. It offers them to show what allegations have been made—and when and by whom—against Xydakis for purposes of his malpractice insurance eligibility. Twin City's counsel certainly has personal knowledge of documents served on Twin City and those filings he retrieved from other courts. The Court may also take judicial notice of publicly filed documents in other courts if, as

here, their existence is not subject to reasonable dispute. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) (citing Fed. R. Evid. 201(b)); *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) (courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts). Twin City's affidavit and the attached filings in, and rulings from, other courts in Exhibit B are admissible.

## BACKGROUND

### A. Underlying Lawsuits

The Chen Lawsuit.[2] Fiona Chen Consulting Company ("Chen Consulting") sued Xydakis for failing to pay retained expert witness fees. (Dkt. 122 ¶¶ 7–8).[3] Chen Consulting alleges that in 2012, Xydakis entered into multiple oral contracts agreeing to pay fees for work performed between June 2012 and October 2012. (*Id.* ¶ 10). It seeks damages for failure to pay these fees, despite multiple requests and demands throughout 2012. (*Id.* ¶ 11). Xydakis filed a sworn Answer, Affirmative Defenses, and Counterclaim against Chen Consulting, demonstrating that all the acts and conduct related to the Chen Lawsuit occurred between January 2012 and November 2012. (*Id.* ¶ 13).

The Spiegel Motions for Sanctions. Litigants in a separate set of lawsuits (collectively the "Spiegel Lawsuits")[4] brought three motions for sanctions against Marshall Spiegel and his attorney Xydakis. First, on May 9, 2018, Valerie Hall filed a petition in the Spiegel Lawsuits seeking

---

[2] The Chen Lawsuit is styled *Fiona Chen Consulting Company v. Edward Shrock, Law Office of John S. Xydakis, P.C., a dissolved Illinois Professional Corporation, John S. Xydakis, John S. Xydakis, d/b/a Law Office of John S. Xydakis, and Law Office of John S. Xydakis*, Case No. 17 L 5621. (Dkt. 122 ¶ 7). The case is pending in the Circuit Court of Cook County, Illinois. (*Id.*)

[4] The first Spiegel lawsuit is styled *Marshall Spiegel and Chicago Title Trust Co., as Trustee of Trust Number 4179 v. Valerie Hall, et al.*, Case No. 15. L 10817. (Dkt. 122 ¶ 14). It was consolidated with two related suits: *1618 Sheridan Rd. Condo. v. Marshall Spiegel, et al.*, Case No. 16 L 3564, and *Marshall Spiegel v. William McClintic, et al.*, Case No. 15 CH 18825. (Dkt. 122 ¶ 14). All the Spiegel Lawsuits were filed in the Circuit Court of Cook County, Illinois. (*Id.*)

3

sanctions under Illinois Supreme Court Rule 137 against Spiegel and Xydakis (the "Hall Motion"). (*Id.* ¶ 17). On July 11, 2018, Duane Morris LLP filed a petition in the Spiegel Lawsuits seeking sanctions under Illinois Supreme Court Rule 137 against Spiegel and Xydakis (the "Duane Morris Motion"). (*Id.* ¶ 18). On or around July 17, 2018, Michael Kim filed a petition in the Spiegel Lawsuits seeking sanctions under Illinois Supreme Court Rule 137 and Section 15 of the Illinois Citizen Participation Act solely against Marshall Spiegel (the "Kim Motion"). (*Id.* ¶ 19). On March 29, 2019, the presiding Cook County judge ruled on all three motions and entered judgment against Spiegel and Xydakis for over $1,000,000. (*Id.* ¶ 21).

The Klein Lawsuit.[5]  Finally, on August 14, 2019, Tiberiu Klein filed a complaint against Twin City and Xydakis alleging legal malpractice, breach of contract, and breach of fiduciary duty. (Dkt. 122 ¶¶ 24, 30, 33). The Klein Lawsuit alleges that Xydakis's wrongful conduct caused Klein to lose his "statutory deadlines" and his opportunity to collect a "significant recovery" of settlement proceeds in an underlying 2014 tort action. (*Id.* ¶ 34). The Klein Lawsuit alleges that Xydakis knew of his malpractice on March 9, 2018 after the Seventh Circuit Court of Appeals "issued a damning decision criticizing Xydakis for his various failures in representing [Klein], which amounts [to] legal malpractice . . . ." (*Id.* ¶ 31; *see also Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018) ("Klein and Xydakis have caused havoc in the tort litigation.")).

**B.    The Twin City Insurance Policy**

In December 2016, Xydakis applied for legal malpractice insurance coverage from Twin City. (Dkt. 122 ¶ 35). Twin City underwrote and issued a claims-made-and-reported Lawyers' Professional Liability Policy to the Law Office of John S. Xydakis (the "Policy"). (*Id.* ¶ 36). The

---

[5] The Klein lawsuit is styled *Tiberiu Klein v. Twin City Fire Ins. Co., John S. Xydakis Law Office, P.C., and John S. Xydakis*, Case No. 19 CH 483. (Dkt. 122 ¶ 24). It was filed in the Circuit Court of McHenry County, Illinois. (*Id.*)

4

Policy covered the period from January 26, 2017 through January 26, 2018. (*Id.*) It provides in relevant part:

> Notice - This is a claims made and reported policy. Please read it carefully. Coverage applies only to claims first made against the insured during the policy period or applicable extended reporting period and reported in writing to the company immediately but in no event later than sixty (60) calendar days after the expiration date of the policy period or applicable extended reporting period. …

(Dkt. 122-1 at *8 (Policy at 1)). The Policy's Scope of Coverage declares:

> We will pay on behalf of an insured, subject to the limit of liability, such damages and claims expenses in excess of the applicable deductible amount for claims made during the policy period or applicable extended reporting period and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the policy period or applicable extended reporting period. The damages must arise out of a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services or non-profit services for others by you or on your behalf provided always that the negligent act, error, omission or personal injury occurs on or after the retroactive date as stated in the Declarations.

(*Id.* at *8 (Policy at 1 § I.A)). It defines a "claim" as "A demand received by an insured for money or services alleging a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services or non-profits services for others by you or on your behalf;" or "Service or receipt of a suit or arbitration proceedings or any other alternative dispute resolution proceeding in which damages are claimed." (*Id.* at *8 (Policy at 1 § I.B.2)).

The Policy defines "retroactive date" as "the date specified in the Declarations, or in any endorsement attached to this policy, on or after which the negligent act, error, omission, or personal injury must have occurred in order for any claim or notice of circumstance given to us pursuant to Section IV: A. Awareness of Circumstances and B. Notice of Claim to be covered under this policy." (*Id.* at *10 (Policy at 3 § I.B.18)). The Policy's Declarations section specifies the retroactive date as January 26, 2016. (*Id.* at *6; Dkt. 122 ¶ 39).

Xydakis sought coverage from Twin City for liability in the Chen Lawsuit and for the Spiegel Motions for Sanctions. (Dkt. 122 ¶¶ 40–41). Twin City has denied it owes Xydakis defense or indemnity obligations in these matters. (*Id.*) Additionally, the Klein Lawsuit seeks damages in connection with Xydakis's alleged malpractice. (*Id.* ¶ 42). Twin City likewise denies it owes defense or indemnity obligations for the Klein Lawsuit. (*Id.* ¶ 43).

**C.    Procedural History**

In September 2018, Twin City sought a declaratory judgment that it owed no duty to defend or indemnify Xydakis for liability arising out of the Chen Lawsuit or the Spiegel Motions for Sanctions. (Dkt. 1). This matter first proceeded before Judge Robert M. Dow. Initially, Twin City brought its claims only against Xydakis, his sole proprietorship, and his dissolved professional corporation. (Dkt. 1). Xydakis moved to dismiss for lack of subject-matter jurisdiction and on ripeness grounds. (Dkt. 18). He also argued that the declaratory action would improperly bind the state court on ultimate factual findings.[6] (*Id.*)

Judge Dow found the action met the amount-in-controversy requirement. (Dkt. 33 at 6). Although Twin City's duty to indemnify Xydakis for the Chen Lawsuit (Counts I–IV) was not ripe, Judge Dow denied the motion to dismiss those counts as to Twin City's duty to defend. (Dkt. 33 at 12). He also found Twin City's duties both to defend and indemnify Xydakis for the Spiegel Motions for Sanctions were ripe for adjudication. (*Id.*) Finally, he concluded that the declaratory-judgment action would not bear on ultimate issues of fact in the underlying lawsuits. (*Id.* at 9–11).

Twin City filed an Amended Complaint adding Defendant Tiberiu Klein and two additional Counts regarding its duty to defend and indemnify Defendants for the Klein Lawsuit. (Dkts. 50, 51). Xydakis's renewed motion to dismiss the Amended Complaint was denied, as he simply

---

[6] *See Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24 (Ill. 1976) (precluding declaratory-judgment action from making ultimate factual findings that would interfere with adjudication of underlying action).

6

repeated the same losing arguments already thoroughly addressed in prior orders.[7] (Dkt. 97). Likewise, Judge Dow denied Klein's Rule 12(b)(7) Motion to dismiss him from the Amended Complaint. (Dkt. 110). Unlike the clients-plaintiffs in the other underlying lawsuits, Klein was a legal party in interest who may have a claim to coverage under the terms of the Policy itself as Xydakis's employee. (*Id.* at 2).

Upon Judge Dow's appointment as Counselor to the Chief Justice of the United States, this action was transferred to this Court. (Dkt. 153). The Court now considers Twin City's Partial Motion for Summary Judgment.[8] (Dkt. 121).

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). Summary judgment "requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[7] In response to Twin City's Motion for Summary Judgment, Xydakis returns to the same subject-matter jurisdiction and *Peppers* doctrine arguments raised—and rejected—several times before. (*See* dkt. 144 at 1–6; *see also* dkt. 33, dkt. 68, dkt. 97). The Court sees no error in those prior rulings and declines to reconsider them here.
[8] Twin City moved for summary judgment on Counts I, IV–VII and XI of its Amended Complaint, as the practical effect of granting the Motion will be a judgment of no coverage for the subject claims in Twin City's favor, rendering consideration of the remaining counts unnecessary. (Dkt. 123 at 1 n.1).

DISCUSSION

A.  **Insurance Coverage Under the Policy**

Under Illinois law,[9] "the insurer's duty to defend arises when 'the facts alleged in the underlying complaint fall within, or potentially within, the policy's provisions.'" *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951–52 (7th Cir. 2020) (quoting *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993)); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1016–17 (Ill. 2010) ("In a declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy."). The insured bears the burden of proving that its claim falls within the policy's coverage. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). Once the insured has established coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies. *Id.* An insurer's duty to defend is broader than its duty to indemnify. *Pekin Ins. Co.*, 930 N.E.2d at 1017 (citing *Outboard Marine Corp.*, 607 N.E.2d 1204 (Ill. 1992)).

An insurance policy's interpretation—like that of any contract—is a question of law. *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019). Courts ascertain and give effect to the parties' intentions, as expressed in the policy language. *Id.* Policy terms that are "clear and unambiguous" must be given their "plain and ordinary meaning." *Id.* The court "construe[s] the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the

---

[9] A federal court hearing a case under diversity jurisdiction "must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2013) (internal citation omitted). The parties agree that Illinois law applies here.

purpose of the entire contract." *Outboard Marine Corp.*, 607 N.E.2d at 1212 (internal citations omitted).

Claims-made insurance policies protect against the risk of an injured party bringing a claim against the insured during the covered period. *Mkt. St. Bancshares, Inc.*, 962 F.3d at 952. Such policies exclude claims brought outside the policy period. *Id.* "A typical claims-made policy covers acts and omissions occurring either before or during the policy period; for prior acts, the policy may provide full retroactive coverage or it may only cover claims arising out of acts and omissions after the 'retroactive date' specified in the declarations." *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1082 (7th Cir. 2007) (quoting 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 4.02(b) (13th ed. 2006)).

Xydakis entered into a claims-made policy with Twin City that began on January 26, 2017 and specified January 26, 2016 as the retroactive date. By its plain language, the Policy covers only damages arising from Xydakis's acts or omissions that occurred on or after January 26, 2016. The policy ended on January 26, 2018 and was not renewed. It allowed up to sixty calendar days after its termination to report a claim. So, Xydakis had until March 27, 2018 to make claims under the Policy. These dates provide all the information needed to resolve this action. The Chen Lawsuit, the Spiegel Motions for Sanctions, and the Klein Lawsuit each fall outside the Policy's scope of coverage, either for underlying conduct occurring before its retroactive date or for claims made after its expiration.

The underlying complaint in the Chen Lawsuit alleges that Xydakis retained Chen Consulting to perform expert witness work from June 2012 to October 2012. It further alleges that Xydakis failed to pay the orally agreed-upon fees. The Chen Lawsuit seeks damages solely based on Xydakis's alleged failure to pay these expert witness fees—all requests for which occurred in

9

2012. Damages sought in the Chen Lawsuit arise exclusively from Xydakis's acts or omissions that occurred years before January 26, 2016. They fall entirely outside the Policy's scope of coverage, and the parties never intended them to be covered. *See Med. Protective Co.*, 507 F.3d at 1082–83 ("Insurers issuing claims-made policies 'protect themselves against liability for old occurrences by including a "retroactive date" specifying the earliest occurrence to be covered, no matter when the claim is made.'" (internal citation omitted)); *Outboard Marine Corp.*, 607 N.E.2d at 1210 (insurance protects the insured from liability arising from an "unknown or contingent event," but not when the insured knows when purchasing the policy "that there is a substantial probability that it will suffer or has already suffered a loss").

The Spiegel Motions for Sanctions were all filed against Xydakis and/or Spiegel after the Policy's 60-day reporting period expired following the coverage period's end. The Hall Motion was filed on May 9, 2018. The Duane Morris Motion was filed on July 11, 2018. The Kim Motion was filed on or around July 17, 2018. No potential for coverage exists because Xydakis made no claim—and never could have done—regarding these sanctions for his litigation tactics before the Policy's 60-day reporting period expired on March 27, 2018. The Spiegel Motions for Sanctions were not claims made and reported within the policy period, so no potential for coverage exists.

The Klein Lawsuit was filed against Xydakis on August 19, 2019—nearly twenty months after the Policy expired. No potential for coverage exists under the Policy because, again, Xydakis did not report the claim to Twin City before March 27, 2018. It falls outside the Policy's scope of coverage, and Xydakis has not met his burden to show otherwise. There is no genuine dispute as to the timeliness of notice here, either.

The action is resolved on Counts I, V, and XI of the Amended Complaint. There is no need to address Twin City's arguments on Counts IV, VI, and VII.

**B.     Estoppel**

Xydakis argues that a genuine issue of material fact exists as to whether Twin City should be estopped from denying coverage. (Dkt. 144 at 9–10). It does not. Under the doctrine of estoppel, an insurer that believes a claim falls outside an insurance policy's coverage may either "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. *If the insurer fails to take either of these steps* and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Emps. Inc. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134–35 (Ill. 1999) (emphasis added). Estoppel only applies where the insurer has breached its duty to defend. *Id.* at 1135. Here, Twin City denied coverage and sought a declaration that it owes no coverage for the underlying actions. The Court finds no duty to defend; estoppel does not apply. *Ehlco*, 708 N.E.2d at 1135.

Xydakis also alleges that Twin City breached its contract in other ways—such that it should be estopped from denying coverage—by (1) failing to offer an extended reporting tail of "at least 12 months as required," and (2) failing to notify Defendants that the policy would not be renewed. (Dkt. 144 at 10). John S. Xydakis's sworn affidavit constitutes the sole evidence of these purported failures. (Dkt. 144 at 19 ¶ 13 ("Twin City did not do provide [sic] Defendants with this extended reporting policy."), *id.* ¶ 16 ("Twin City did not notify Defendants that the Policy would be renewed.")).

First, the Policy clearly states that Xydakis was required to exercise his right to purchase an extended reporting period by providing written notice to Twin City accompanied by the additional premium within sixty days after the Policy's termination. (Dkt. 122-1 at *12 (Policy at 5 § F.1.a)). Xydakis cannot say that Twin City failed to offer him an extended reporting tail when the Policy explicitly does so. Nor has Xydakis given any evidence that he exercised his right to

11

purchase the extended reporting period in the manner required. Second, Twin City provided evidence of its Renewal Solicitation sent to Xydakis (via his insurance broker). (Dkt. 152-1). The notice advised that the Policy would expire on January 26, 2018, and that Xydakis needed to submit a renewal application by November 27, 2017. (*Id.*) Even if Xydakis never received the renewal notification, he fails to adduce sufficient evidence showing that Twin City breached its contract.

Finally, Xydakis's estoppel argument fails even if an unrelated breach had occurred. "When the policy and the [underlying] complaint are compared, [and] there was clearly no coverage or potential for coverage, estoppel does not apply." *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019) (citing *Ehlco*, 708 N.E.2d at 1135) (cleaned up and internal quotation marks omitted). "[E]stoppel may not be used to create or extend coverage where none exists." *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 663 (Ill. App. Ct. 2015).

**C.     Duty to Indemnify**

The duty to defend subsumes the duty to indemnify. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009) (citing *Crum & Forster*, 620 N.E.2d at 1081). "[W]here no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise." *Crum & Forster*, 620 N.E.2d at 1081 (emphasis in original). Twin City owes Defendants no duty to defend in any of the underlying actions; therefore, no duty to indemnify exists.

## Conclusion

The Court grants Twin City's Motion for Summary Judgment. [121] The Court further declares that Twin City Fire Insurance Company owes no duty to defend or indemnify the Law Office of John S. Xydakis, P.C., a dissolved Illinois Professional Corporation, and John S. Xydakis, individual and doing business as the Law Office of John S. Xydakis, a sole proprietorship with respect to the Chen Lawsuit, the Spiegel Motions for Sanctions, and the Klein Lawsuit.

_____
Virginia M. Kendall
United States District Judge

Date: March 20, 2023